# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| CYNTHIA GROSS, Individually and on Behalf of All Others Similarly Situated, | Case No.: 18-cv-970 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| NATIONWIDE CREDIT & COLLECTION INC., | |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Cynthia Gross is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes, namely medical services.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt arose from an agreement or series of agreements to defer payment.

6. Defendant Nationwide Credit & Collection Inc. ("NCC") is a foreign business corporation with its principal place of business located at 815 Commerce Drive Ste 270, Oak Brook, Illinois 60523.

7. NCC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. NCC is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. NCC is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and. Wis. Admin. Code Ch. DFI-Bkg 74.

10. NCC is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. Upon information and belief, Plaintiff obtained medical services from "Athletico Physical Therapy" ("Athletico") on or about November 2, 2017 and November 6, 2017.

12. Any debts incurred as a result of these medical services were incurred for personal, family, or household reasons.

13. Plaintiff was not required to pay for the medical services at the time services were rendered. Instead, the creditor, or a billing agent, mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'"); *see also, e.g., Kelly v. Montgomery Lynch & Assocs.*, 2008 U.S. Dist. LEXIS 30917, at * 9-10 (N.D. Ohio Apr. 15, 2008) ("The debt at issue in this case involves financial expenses incurred . . . in exchange for medical services . . . . Pursuant to this debt, the Plaintiff

2

was offered the right to receive medical services and to defer payment on those financial obligations. This is a classic transaction out of which debts arise under the FDCPA.").

14. On or about April 26, 2018, NCC mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to Athletico. A copy of this letter is attached to this complaint as Exhibit A.

15. Upon information and belief, the alleged debt identified in Exhibit A was incurred as a result of the medical services Athletico provided.

16. Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

17. Upon information and belief, Exhibit A is a form debt collection letter, used by NCC to attempt to collect alleged debts.

18. Upon information and belief, Exhibit A is the first written communication NCC mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

19. Exhibit A contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the consumer along with, or within five days of, the initial communication:

> **NOTICE PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT**
> **(FDCPA)**
> **15 USCA 1692**
>
> This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

20. Exhibit A also contains the following:

```
Client Name: ATHLETICO PHYSICAL THERAPY
Guarantor Number: ███61
Amount Due: $55.45
Online Payment ID: ███2110
```

3

. . .

> You may also pay your account online by visiting https://www.clientaccessweb.com/NCC/payments and entering NCC File Number: ███2110.

Exhibit A.

21. Exhibit A states that Plaintiff's "Online Payment ID" ending in 2110 is associated with an "Amount Due" of $55.45.

22. Exhibit A also contains the following:

> You may have additional accounts placed for collection with our agency. If you would like to discuss this matter with your account representative, we are available to assist you. When calling regarding your account, please refer to Guarantor Number: ███61.

Exhibit A.

23. Exhibit A states the amount of the debt NCC is attempting to collect in a confusing and misleading manner.

24. Exhibit A states that NCC is attempting to collect $55.45 in one place, but then goes on to state that NCC may actually be attempting to collect "additional accounts" from Plaintiff.

25. Exhibit A further confuses the consumer by contradicting the statement that there may be "additional accounts placed for collection" by stating that the "Total Amount" NCC is collecting is $55.45, and that this amount "may include other accounts not listed above":

> May include other accounts not listed above
> **Total Amount Due: $55.45**

Exhibit A.

26. The consumer would be left scratching her head and wondering whether the representation that the $55.45 balance "may include other accounts not listed above" meant that there were no "additional accounts placed for collection."

4

27.     Exhibit A further exacerbates this confusion by implying that a $55.45 payment would not extinguish the debt if there are any "additional accounts" that NCC is attempting to collect:

> Please note: For multiple accounts, payments are applied to the oldest accounts first when not specified.

Exhibit A.

28.     Exhibit A fails to state the amount of the debt in a non-confusing manner. The instruction to call NCC "to discuss [additional accounts] with your account representative" would be confuse and mislead the unsophisticated consumer about whether the "Total Amount Due" was equal to the "Amount Due" because there were no "additional accounts" that NCC was attempting to collect, or whether NCC was, in fact, attempting to collect some other, unspecified, amount.

29.     The Seventh Circuit has held that a debt collector confuses the consumer as to the amount it is attempting to collect by representing that the consumer owes some amount, but may also owe some additional, unspecified amounts. *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 949 (7th Cir. 2004) (emphasis added):

> Our conclusion does not place debt collectors on a razor's edge, where if they say too little they violate the Act by failing to disclose the amount of the debt they are trying to collect and if they say too much they violate the Act by confusing the consumer. If the debt collector is trying to collect only the amount due on the date the letter is sent, then he complies with the Act by stating the "balance" due, stating that the creditor "has assigned your delinquent account to our agency for collection," and asking the recipient to remit the balance listed—**and stopping there, without talk of the "current" balance**.

30.     Upon information and belief, when NCC mailed Exhibit A, NCC was not attempting to collect any "additional accounts" from Plaintiff.

31.     The Seventh Circuit explained in *Chuway*, 362 F.3d at 949, that "[a] letter can be confusing even to a sophisticated reader though it does not contain an outright contradiction."

5

32. The apparent contradiction inherent in Exhibit A stating a "Total Balance Due" that "may include other accounts not listed above" and also representing that the consumer "may have additional accounts placed for collection with our agency" engenders gratuitous and unnecessary confusion.

33. Plaintiff was confused and misled by Exhibit A.

34. The unsophisticated consumer would be confused and misled by Exhibit A.

35. Plaintiff had to spend time and money investigating Exhibit A.

36. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA*

37. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) (" 'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of

6

the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes

7

creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

38. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

39. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

40. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

41. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

42. 15 U.S.C. § 1692g states:

> **(a) Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

8

> (1) the amount of the debt;
>
> . . .
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
>
> **(b) Disputed debts**
>
> . . .
>
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

43. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

44. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

45. The Seventh Circuit explained in *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629-30 (7th Cir. 2009), that a debt collector that uses gratuitous and confusing language in an initial collection letter runs the risk of distracting the consumer away from her statutory rights to dispute the debt, and bears the burden of explaining why that language was used and justifying its inclusion.

### *The WCA*

46. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

47. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

48. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

49. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

10

50. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

51. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

52. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

53. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

54. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

55. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

56. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair

11

Case 2:18-cv-00970-NJ    Filed 06/26/18    Page 11 of 14    Document 1

Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

57. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

58. <u>Exhibit A</u> states the amount of the debt in a confusing and misleading manner. The unsophisticated consumer would not know whether NCC was actually attempting to collect the "Total Balance Due" or was also attempting to collect "additional accounts" in some unspecified amount.

59. <u>Exhibit A</u> confuses the consumer and distracts her away from her statutory rights to dispute the debt.

60. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692g(a)(1), and 1692g(b).

## COUNT II – WCA

61. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62. Defendant is licensed as "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions.

63. <u>Exhibit A</u> states the amount of the debt in a confusing and misleading manner. The unsophisticated consumer would not know whether NCC was actually attempting to collect the "Total Balance Due" or was also attempting to collect "additional accounts" in some unspecified amount.

64. <u>Exhibit A</u> confuses the consumer and distracts her away from her statutory rights to dispute the debt.

65. <u>Exhibit A</u> violates the FDCPA.

66. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## **CLASS ALLEGATIONS**

67. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint, (c) seeking to collect a debt for personal, family, or household purposes, (d) where all of the debts NCC was attempting to collect for that consumer were stated in the letter in the form of <u>Exhibit A</u>, (e) and the letter in the form of <u>Exhibit A</u> was mailed between June 26, 2017 and June 26, 2018, inclusive, (f) and was not returned by the postal service.

68. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

69. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

70. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

71. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

72. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

73. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: June 26, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

14